**BASF WYANDOTTE CORPORATION,
Plaintiff-Appellant,**

v.

**The TUG LEANDER, JR., etc., et al.,
Defendants-Appellees.**

No. 77–1091.

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1979.

T. C. W. Ellis, Gary A. Lee, New Orleans, La., for plaintiff-appellant.

Brunswick G. Deutsch, New Orleans, La., for defendants-appellees.

Before THORNBERRY, GODBOLD and HILL, Circuit Judges.

PER CURIAM:

AFFIRMED on the basis of the district court's memorandum and order dated December 27, 1976, which is attached as an Appendix hereto.

APPENDIX

MEMORANDUM AND ORDER

This case presents for determination an interpretation and determination of the le-

gal validity of certain contractual provisions in a towage agreement. The parties have agreed to submit the issue of liability (damages having been severed) on briefs and depositions previously taken.

The essential facts in this case are not in dispute, and a stipulation of facts, filed in the record, indicates that the Court need only determine the contractual issue. However, a brief recital of the pertinent facts is in order.

Since 1966, Dixie Carriers, Inc. (Dixie) and BASF Wyandotte Corp. (BASF) were operating under a towage contract, whereby Dixie agreed to tow BASF's barges pursuant to a certain schedule. Although regular rate increases took place, the principal contract has undergone virtually no change since its inception. (The contract is appended hereto as Exhibit "A").

Dixie sub-contracted with Sidney Torres d/b/a Sidney Torres Boat Rental (Torres) to tow BASF's Barge WYCHEM 114 and three other barges from BASF's Geismar, Louisiana plant to Lemoine, Alabama.

On December 31, 1972, in the course of the towing process, the operator of the tug dispatched by Torres negligently caused the break-up of the tow and the damage to the WYCHEM 114. The damage caused by the tug's negligence led to the sinking of the WYCHEM 114, and it is from this property loss that the present action arose.

■ Two issues are presented to the Court for determination. The primary issue is whether Special Condition 20.2 of the towage contract is legally enforceable and, following a determination of that issue, whether the defendant can enforce the terms of the contract under Clause 18. The Court believes that, for the following reasons, the questions both must be answered in the affirmative.

The United States Supreme Court, in *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955) held that a contractual provision whereby the tug owner sought to protect himself against his own negligent actions was unenforceable. This rationale was premised on the grounds that overreaching existed in the *Bisso* case and that a party should not be permitted to insulate itself from responsibility for its own negligent acts.

The Fifth Circuit, in *Fluor Western, Inc. v. G & H Offshore Towing Co.*, 447 F.2d 35 (C.5, 1971) and *Twenty Grand Offshore, Inc. v. West India Carriers, Inc.*, 492 F.2d 679 (C.5, 1974), applied the *Bisso* standard and determined that policy provisions which require the barge owner to obtain coverage and waive subrogation against the tug owner were not within the *Bisso* prohibition. Thus, despite the large number of briefs filed in this matter, the issue is a simple one.

The plaintiff contends that *Fluor* and *Twenty Grand* are inapplicable because a mutuality of waiver of subrogation rights is lacking in the instant case. However, the Court does not believe that mutuality is a necessary requirement for a legally enforceable *Fluor* and *Twenty Grand* contract.

Accordingly, the Court holds that the waiver provisions of Special Condition 20.2 are valid and legally enforceable and that, insofar as BASF has obtained payment for losses incurred from its insurer, recovery is prohibited.

■ It is to be noted that the plaintiff's contention that it acceded to the terms of the contract "under protest" does not, in the Court's opinion, render the clause unenforceable but merely served to reserve the plaintiff's rights to contest the legality of the clause and avoid the defense of estoppel.

■ Having determined that Special Condition 20.2 is legally enforceable, the Court must now consider whether Torres is a proper party to seek to enforce the contract.

The defendant contends that Clause 18 which provides:

"18. Privilege is hereby granted for Tower at its discretion to employ vessels not owned by it to perform hereunder,

and whenever, in the performance of this agreement Tower uses or procures or permits the use of any vessel or equipment not owned by Tower all of the covenants and exemptions from liability and hold harmless agreements herein provided are applicable to Tower shall also be applicable and benefit thereof shall accrue to said vessel and equipment, its master and crew, and to its owner, operators and agents, their servants and employees." entitled Dixie to contract out certain work under the terms and conditions of the Dixie/BASF contract. The Court agrees. The Court believes that a fair reading of the contract implies that Dixie may, under certain circumstances, contract out towage work. Therefore, Torres is entitled to claim the defense of Special Condition 20.2 under the shelter of Clause 18.

For the foregoing reasons, the Court believes that neither of the motivating factors responsible for the *Bisso* decision are present in the instant case and that the Fifth Circuit decisions of *Fluor* and *Twenty Grand* control, and the issue of liability is, accordingly, decided in favor of the defendants.

## EXHIBIT "A"

### TOWING CONTRACT

Dixie Carriers, Inc. hereinafter sometimes called "Tower", agrees to tow the following craft designated "Craft to be Towed" upon the terms and conditions hereinafter set forth, when accepted by Owner of the "Craft to be Towed", hereinafter sometimes called Owner, either by acceptance endorsed at the foot hereof or by delivery of the "Craft to be Towed" to Tower, its agents, servants and employees and/or to Tower's subcontractors, to-wit:

1. Owner of "Craft to be Towed":  Wyandotte Chemical Company
   P. O. Box 111
   Wyandotte, Michigan 42192

2. "Craft to be Towed":  Various Tank Barges

3. Towing vessel: Suitable horsepower  , fully found, or a suitable substitute.

4. Voyages:  Various origins and destinations on the Gulf Intracoastal Canal, see attachment

5. Rate:  See attachment

6. The service above mentioned rests alone upon this contract and neither Tower nor its vessels or servants shall be held in any way to common carrier liability.

7. Owner of the "Craft to be Towed" warrants that at the inception of towage hereunder said "Craft to be Towed" will be seaworthy in every respect, and fully equipped and supplied. This towing contract, having been entered into without inspection by Tower of the "Craft to be Towed", shall be null and void, and Tower shall be under no obligation hereunder, if in the judgment of the master of the towing vessel, the "Craft to be Towed" or any part thereof is unseaworthy, or for any reason would constitute a risk or hazard to the tow, or any misstatement has been made in giving a description of the "Craft to be Towed"; provided that nothing herein contained shall impose any duty upon Tower, its agents, servants or employees, to inspect the "Craft to be Towed", or make anyone of them liable for damage resulting from failure to make an inspection or resulting from any error of judgment in making an inspection.

8. When the towing vessel starts on the voyage with the tow, the entire amount of the agreed towage price shall become earned and due and payable, tow and/or cargo lost or not lost, or damaged or not damaged, at any stage of the entire transit.

NO. 9  NOT APPLICABLE—SEE SPECIAL CONDITIONS (1)

9. Owner of the "Craft to be Towed" agrees to indemnify and hold harmless Tower and the boats and/or other equipment used in the contemplated movement of the "Craft to be Towed", and its cargo, if any, and any owner, charterer, and hirer thereof from any liability to or for account of the crew of the "Craft to be Towed", because of any accident, damage, injury or loss of life of the said crew, or any loss of personal property or effects of the said crew, however arising, and the Owner of the "Craft to be Towed" agrees to defend any and all suits or other actions which may be brought against Tower and the boats and/or other equipment used in the contemplated movement of

the "Craft to be Towed", and its cargo, if any, and any owner, charterer and hirer thereof, by or for account of the members of such crew for the reasons aforesaid, and to pay, satisfy or discharge any and all judgments that may be rendered therein, to the full acquittance and discharge of Tower and the boats and/or other equipment used in the contemplated movement of the "Craft to be Towed" and its cargo, if any, and any owner, charterer and hirer thereof.

10. Tower will furnish meals to caretakers accompanying "Craft to be Towed", at a charge of $1.25 per man per day or fraction thereof.

### NO. 11  NOT APPLICABLE—SEE SPECIAL CONDITIONS (2)

11. Owner of the "Craft to be Towed" agrees to obtain at its expense and keep in full force and effect throughout the life of this agreement, in good, solvent companies, full form A.I.T.H. (December 1, 1955) hull insurance, and Protection and Indemnity Insurance (Ocean Form) on the "Craft to be Towed" and all floating equipment towed hereunder, and full form cargo insurance on all cargoes to be transported in or on the "Craft to be Towed" to the full insurable values thereof, naming Tower and its vessels as assureds and having all rights of subrogation waived by all underwriters against Tower, its vessels, their owners, operators, agents and managers, charterers and parties at interest therein. Owner of the "Craft to be Towed" will pay all deductibles under said barge and cargo policies.

12. Force Majeure: It is agreed that neither the vessel, her master, crew or Tower shall, unless otherwise in this towage contract expressly provided, be responsible or liable for any loss, damage or delay or failure in performing hereunder arising or resulting from: Act of God, perils of the sea, fire, explosion, act of war, act of public enemies, pirates or assailing thieves, epidemic, quarantine, embargo, arrest or restraint of princes, rulers of people, or from saving or attempting to save life or property at sea, or seizure under legal process, strike or lockout or stoppage or restraint of labor from whatever cause, either partial or general, or riot or civil commotion.

Nor shall the vessel, her master, crew or Tower be liable for any loss, damage or delay arising from errors in navigation or management of the vessel or from latent or other defects in hull, machinery and equipment or any unseaworthiness not resulting from failure to use due diligence to make the vessel seaworthy.

13. Owner, although not a common carrier, and its vessel, when towing barges carrying cargo, shall be entitled to all the exemptions and benefits awarded to a water carrier under the Carriage of Goods by Sea Act, 46 U.S.C.A., Sec. 1300, et seq. and amendments. Nothing in this contract shall be construed to deprive Owner or limit Owner's right to benefit or rules of law or statutory protection or exemption from or limitation of liability accorded to an Owner of vessels for the time being in force which otherwise would be applicable.

### NO. 14—NOT APPLICABLE—SEE SPECIAL CONDITIONS (1)

14. Indemnity: If the tug or tow comes into collision with another vessel or object as a result of the negligence of the other vessel or object and any act, neglect or default of Tower, or the master or crew of the tug, for which, or for the consequences of which Tower is not responsible to the Owner of the "Craft to be Towed" or the owner of the cargo on board thereof by statute or contract or otherwise, Owner and other parties having an interest in the barge and cargo shall jointly and severally indemnify Tower against all liability to the other vessel or object or her or their owners or the owners of the cargo on the other vessel or object with respect to any payment which the Owner or such other parties have received or may be entitled to receive from such other vessel or object or her or its owners or the owners of the cargo on board the other vessel or object.

### NO. 15—NOT APPLICABLE—SEE SPECIAL CONDITIONS (1)

15. General Average: In the event of accident, danger, damage or disaster before or after commencement of any voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, Tower is not responsible by statute or contract or otherwise, Owner, shipper or consignees or owners of any barges in tow, and the cargo on board thereof, shall contribute with Tower in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect to the barge and cargo.

16. Owner of the "Craft to be Towed" agrees that all bills of lading, contracts of affreightment, cargo receipts and oral agreements for carriage of cargo in or on barges to be towed by Tower's vessel shall be made subject to the terms and conditions hereof.

**100**

17. The "Craft to be Towed" will be moved only at the convenience of Dixie Carriers, Inc. and not by any particular tow, and Dixie Carriers, Inc. reserves the right to change "Craft to be Towed" from one to another of its tows as frequently as it may find it convenient to do so.

18. Privilege is hereby granted for Tower at its discretion to employ vessels not owned by it to perform hereunder, and whenever, in the performance of this agreement Tower uses or procures or permits the use of any vessel or equipment not owned by Tower all of the covenants and exemptions from liability and hold harmless agreements herein provided are applicable to Tower shall also be applicable and the benefit thereof shall accrue to said vessel and equipment, its master and crew, and to its owner, operators and agents, their servants and employees.

19. Whether or not the Owner subscribes in the acceptance space provided at the foot hereof, the delivery of the "Craft to be Towed" to Tower, its agents, servants and employees, shall constitute an acceptance of all of the terms and conditions of this contract.

20. SPECIAL CONDITIONS:

1. Clauses 9, 14, and 15 are void.

2. Clause 11 is amended to read: "Owner of craft to be towed agrees to waive all rights of subrogation against Tower, its vessels, their owners, operators, agents and managers, charterers and parties at interest therein".

3. Tower will make one placement of craft to be towed at destination and one placement at origin. Any additional shifting will be performed for account of barge at Tower's out-of-pocket costs.

ACCEPTED:

BY /s/  G. J. Mason

Date:  2/9/70

DIXIE CARRIERS, INC.

BY /s/   Richard E. Girouard

Richard E. Girouard
Traffic Department